## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

EIGHT SLEEP, INC.,

       Plaintiff,

    v.

SOMNUS LAB and RAYNEWOOD AB,

       Defendants.

Civil Action No. 2:25-cv-1011

**JURY TRIAL DEMANDED**

## EIGHT SLEEP, INC.'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Eight Sleep, Inc. ("Eight Sleep"), for its Complaint against Defendants Somnus Lab and Raynewood AB (collectively, "Defendants"), hereby alleges as follows:

### NATURE OF THE ACTION

1.    This is a civil action for infringement of U.S. Patent Nos. 10,792,461 (the "'461 Patent") (attached as Ex. 1), 12,377,240 (the "'240 Patent") (attached as Ex. 2), 12,370,339 (the "'339 Patent") (attached as Ex. 3), and (collectively, the "Asserted Patents"), arising under the Patent Laws of the United States, 35 U.S.C. §§ 271, *et seq.* Plaintiff brings this action to seek injunctive relief and damages arising out of Defendants' infringement of the Asserted Patents.

### THE PARTIES

2.    Plaintiff Eight Sleep is a Delaware corporation with its principal place of business at 915 Broadway, Ste 1301, New York, NY 10010.  Eight Sleep is a pioneering "sleep fitness" company that focuses on leveraging innovation, technology, and biometrics to design innovations that improve sleep.  Eight Sleep has spent millions of dollars researching and developing novel products to improve how people sleep, and the quality of that sleep.  Eight Sleep's products have

various applications, from increasing not only the quality of sleep, but also quantity, as well as tracking key biometrics to monitor and improve overall health and fitness. These innovations have resulted in the issuance of several patents, including the Asserted Patents.

3.      On information and belief, Defendant Somnus Lab is a Sweden-based entity with a principal place of business at Sormenvägen 50, 186 30 Stockholm, Sweden. *See* Ex. 4 (IFA Berlin Exhibitor Page for Somnus Lab) (listing address). Somnus Lab's logo is reproduced below:



Ex. 5 (Somnus Lab Homepage).

4.      On information and belief, Defendant Raynewood AB is a Sweden-based entity with a principal place of business at Sormenvägen 50, 186 92 Vallentuna, Stockholm, Sweden.[1] *See* Ex. 6 (Bolagsverket (Swedish Companies Registration Office) Result for "Raynewood AB"). On information and belief, Raynewood AB owns European Trademark No. 019089771 ("EUTM '771 for "Somnus Lab." *See* Ex. 7 (EUIPO Certificate of Registration for EUTM '771). The graphic representation for EUTM '771 is reproduced below:



*Id.* at 2.

---

[1] Although the addresses for Somnus Lab (Sormenvägen 50, 186 **30** Stockholm, Sweden) and Raynewood AB (Sormenvägen 50, 186 **92 Vallentuna**, Stockholm, Sweden) slightly differ, it appears both addresses reference the same location.

5.    On information and belief, Defendant Somnus Lab is at least a related entity of Defendant Raynewood AB (*e.g.*, having a direct or indirect subsidiary-parent or sister company relationship).

6.    On information and belief, Defendants are engaged (including, as relevant, in the past) in making, using, selling, offering for sale, and/or importing, and/or inducing one another and their respective subsidiaries, affiliates, distributors, suppliers, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, Somnus Lab and/or Raynewood AB products.

## JURISDICTION AND VENUE

7.    Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

8.    This action arises under the patent laws of the United States, including 35 U.S.C. §§ 271, *et seq.*  This Court has proper jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

9.    This Court has personal jurisdiction over Defendants.  On information and belief, Defendants conduct business, have committed acts of patent infringement directly or through related entities, and have induced acts of patent infringement by others in this District and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with the State such that personal jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice.  On information and belief, Defendants place, have placed, and contribute to placing their products into the stream of commerce through established distribution channels knowing or understanding that such products would be sold and used in the United States, including in this District.

10.     This Court has specific personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the U.S. Constitution and the Long-Arm Statute of the State of Texas.  On information and belief, each Defendant has availed itself of the privilege of conducting and soliciting business within Texas, including engaging in at least some of the infringing activities in Texas, as well as by others acting as Defendants' agents and/or representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution, and the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

11.     Alternatively, this Court has personal jurisdiction over the Defendants under Fed. R. Civ. P. 4(k)(2).  This is because: (a) the claims for patent infringement in this action are claims arising under federal law; (b) the Defendants are not subject to the jurisdiction to any state's courts of general jurisdiction; and (c) exercising jurisdiction over the Defendants is consistent with the U.S. Constitution.

12.     Venue is proper for the Defendants in this District pursuant to 28 U.S.C. § 1391. The Defendants are both foreign entities, and may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

### THE ASSERTED PATENTS

13.     The '461 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the USPTO on October 6, 2020.  A true and correct copy of the '461 Patent is attached as Exhibit 1.

14.     The '240 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the U.S. Patent and Trademark Office ("USPTO") on August 5, 2025.  A true and correct copy of the '240 Patent is attached as Exhibit 2.

15.    The '339 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the USPTO on July 29, 2025.  A true and correct copy of the '339 Patent is attached as Exhibit 3.

16.    Eight Sleep is the sole owner of, and possesses all rights, interests, and title of, the Asserted Patents, and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patents, including filing the instant patent infringement lawsuit.  Eight Sleep also possesses the right to recover all damages for past, present, and future infringement of the Asserted Patents, and to seek all injunctive relief as appropriate under the law.

17.    The Defendants infringe one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a)–(c), as alleged below.

### FACTUAL ALLEGATIONS

#### EIGHT SLEEP'S INNOVATIONS

18.    Sleep deficiency is linked to many physical and mental health problems, such as heart disease, kidney disease, high blood pressure, diabetes, stroke, obesity, and depression.  *See* Ex. 8.  "About 1 in 3 adults in the United States reported not getting enough rest or sleep every day."  *Id.*  Further, "[n]early 40% of adults report falling asleep during the day without meaning to at least once a month.  Also, an estimated 50 to 70 million Americans have chronic, or ongoing, sleep disorders."  *Id.*

19.    Eight Sleep was founded in 2014 by Matteo Franceschetti, Massimo Bassi, and Alexandra Zatarain with the mission to "fuel human potential through optimal sleep."  After surveying thousands of potential customers and collecting more than 43 million hours of sleep data, Eight Sleep discovered that "[b]ody temperature is one of the main factors that affects sleep quality and, therefore, must be tightly regulated for optimal sleep."  *See* Ex. 10 at 1.  Eight Sleep

developed its flagship product, the "Eight Sleep Pod," a bio-tracking mattress cover that utilizes dynamic heating and cooling to improve sleep quality by reducing sleep interruptions and increasing periods of deep sleep. *See* Ex. 11.  In 2019, Eight Sleep released its first Eight Sleep Pod. The Eight Sleep Pod is depicted below, with the pad (laid on top of a bed mattress) on the left, and the base unit on the right:



20.    "[T]he Eight Sleep Pod is a temperature-regulated mattress cover that provides individualized temperature regulation (i.e., selection of temperatures ranging from 13 to 43C) on each side of the bed at three different points in the night, allowing for continuous temperature regulation throughout the night." Ex. 10 at 2.  The Eight Sleep Pod improves upon prior methods to regulate body temperature during sleep (*e.g.*, manipulating ambient temperature, warming the extremities, modifying clothing or bedding layers, using electric blankets, using a thermal suit during sleep, cooling the head, or sleeping on a high heat capacity mattress) as such prior methods typically did not change temperatures to adjust for different phases of sleep, and could not individualize temperatures based on a user's unique physiology (including gender differences)— both of which are key features of the Eight Sleep Pod. *See id.* at 1–2.  The Eight Sleep Pod independently regulates temperature on each side of the bed, which adjusts during sleep based on biological signals of each user, such as sleep stage, heart rate, and respiratory rate. *See* Ex. 12; Ex.

13. Eight Sleep also provides a software using proprietary algorithms which take user's biological signals and optimizes temperature, and the timing of temperature changes:



**Cooling and warming for two zones**
Sleep your way as each side of the bed adjusts independently

Ex. 12 at 3; Ex. 13.[2]  The Eight Sleep Pod also features a functionality—"Gentle Rise"—to silently wake users using temperature control and vibrations, based on where the user is in his sleep cycle (as opposed to traditional alarms, which wake the user regardless of where he may be in his sleep cycle).  *See* Ex. 14.

21.    A peer-reviewed study showed that the Eight Sleep Pod's continuously temperature-regulated bed surface "can (1) significantly modify time spent in specific sleep stages [deep, light, and REM sleep] in certain parts of the night, and (2) enhance cardiovascular recovery during sleep."  *Id.* at 1; *see also* Ex. 15.  Another study found that "[a]fter one month sleeping on

---

[2] The Eight Sleep Pod also allows users to manually adjust temperatures using a control panel built into the device.  *See* Ex. 13 ("Phone-free temperature control[.]  Adjust your temperature instantly with just a tap, no phone needed.").

the Pod, members [users] reported 32% better sleep quality scores on average[,]" measured across "daytime energy scores," number of "sleep interruptions," and speed of "sleep onset." *See* Ex. 16.

22.     Eight Sleep's innovations have been recognized by the numerous patents it has been awarded, including the Asserted Patents. Eight Sleep's innovations have also been recognized by the numerous awards the company and its products have won. In 2019, the Eight Sleep Pod was selected as one of TIME's 100 Best Inventions for the year. *See* Ex. 17. In 2020, the Eight Sleep Pod won a Red Dot Design Award, which is awarded to "products that distinguish themselves with exceptional industrial design." Ex. 18. In both 2022 and 2023, Eight Sleep was named to Fast Company's (a monthly business magazine) annual lists of the world's most innovative companies. *See* Exs. 19, 20. In 2025, the Eight Sleep Pod 4 was recognized as the "Best Sleep Tech" by the T3 Awards. *See* Ex. 21.

SOMNUS LAB AND RAYNEWOOD AB'S INFRINGING ACTIVITIES

23.     On information and belief, Somnus Lab is a Sweden-based entity founded in August 2024. *See* Ex. 22 (Crunchbase Profile for Somnus Lab); Ex. 23 (Somnus Lab Webpage – About). Somnus Lab's stated mission is "[t]o bridge the gap between what science already knows and what people actually experience in bed. We design products that are grounded in physiology, engineered with precision, and built for everyday use." Ex. 23 (Somnus Lab Webpage – About).

24.     As discussed above, on information and belief, Somnus Lab is at least a related entity of Raynewood AB. *See* ¶¶ 3–5, *supra*. Available physical addresses for Somnus Lab and Raynewood AB are the same: Sormenvägen 50, 186 30 Stockholm, Sweden. *See id.* Raynewood AB also owns EUTM '771, which is the same graphic for "Somnus Lab" used on Somnus Lab's homepage. *See id.* Additionally, Raynewood AB's "External CEO" and Somnus Lab's founder and CEO are the same person: Chu Zhu. *Compare* Ex. 24 *with* Ex. 25.

25.    Somnus Lab offers the "Sleep Pad" (the "Accused Product"), which it describes as "[a]n intelligent temperature system that adapts in real time.  A thin, quiet sleep pad and base unit that heat and cool with 12–42 °C precision, per side."  *See* Ex. 23 (Somnus Lab Webpage – About); *see also* Ex. 26 (Somnus Lab Website – Sleep Pad).  An image of the Accused Product is reproduced below, with the base unit on the left, and the pad on the right:



Ex. 26 at 5.  On information and belief, Somnus Lab is currently taking pre-orders for the Sleep Pad, with deliveries expected to begin in October 2025:



Ex. 26 at 1.

26.    Somnus Lab offers Sleep Pad for sale to U.S. customers, as demonstrated by the below screenshots:



Ex. 26 at 1 (showing option to select U.S. region and shop in U.S. dollars).



Ex. 27 (Somnus Lab Website – Checkout) (showing "Somnus Lab Sleep Pad – US Version" in cart, and option to select "United States" for delivery).

27.     Functionalities of the Sleep Pad include, among others: monitoring user's biological signals; regulating temperature independently on both sides of the bed; regulating temperatures depending on the user's stage of sleep; using temperature to rouse users from sleep; using artificial intelligence to turn user's biological signals into "real-time [temperature]

-11-

adjustments, personalized insights, and smarter routines." *See* Ex. 23 (Somnus Lab Webpage –
About).



**WHAT'S INSIDE**

- **Somnus Insight** — sensors and algorithms that respond to heart rate, respiration, HRV, motion, and snoring—without wearables.
- **Dual-zone precision** — independent profiles for each side of the bed.
- **Stage-aware comfort** — cooler in deep sleep, warmer in REM, and a thermal rise to wake you gently.
- **Open by design** — works on its own, or alongside Apple Watch and Oura.

**WHERE WE'RE GOING**

Sleep is bigger than temperature. Light, sound, mental state, dietary and exercise habits, nutrition, and supplements all shape how we rest. Each factor has solid science behind it.

Our vision is to make all of it practical—one system that adapts to the full spectrum of your sleep environment and lifestyle.

With AI, we'll connect the dots: turning data into real-time adjustments, personalized insights, and smarter routines. Less guessing, more sleeping.

Ex. 23 (Somnus Lab Webpage – About).



## Gentle Thermal Alarm

Cooler for deep sleep, Rise with warmth, not noise—temperature climbs gradually to nudge you awake in your light-sleep window.

Ex. 5 at 4.  The Accused Product's thermal alarm feature (coined the "Gentle Thermal Alarm")
closely resembles—in feature and name—the "Gentle Rise" feature offered by the Eight Sleep
Pod, discussed above.  *See* ¶ 20, *supra*.

28.     Somnus Lab offers a smartphone application that works on conjunction with the
Accused Product called the "Somnus Lab App":



Ex. 26 at 3.

29.    The "Somnus Lap App" bears striking resemblance to Eight Sleep's own smartphone application. When lined up, the similarity is uncanny:

| Eight Sleep | Somnus Lab |
|---|---|



Exs. 29 (Somnus Lab App Google Play Page), 28 (Eight Sleep Application Google Play Page).

Comparisons of other screenshots are shown below, again with Eight Sleep on the left, and the

Somnus Lab App on the right:

| Eight Sleep | Somnus Lab |
|---|---|



Exs. 29 (Somnus Lab App Google Play Page), 28 (Eight Sleep Application Google Play Page). It is particularly notable that even the times shown on the screenshots of the Somnus Lab App—9:41—is the *exact* time shown on the screen shots for Eight Sleep's application. On information and belief, a reasonable company would have investigated whether Eight Sleep owned any patents before copying Eight Sleep's mobile app. Thus, to the extent that Somnus lacked actual knowledge of the Asserted Patents, its conduct constituted willful blindness.

30.    By letter dated September 29, 2025 (the "Notice Letter"), addressed to Chu Zhu, founder and CEO of Somnus Lab, and "External CEO" of Raynewood AB, Defendants received notice of its infringement of the Asserted Patents. *See* Ex. 30.

31.    Additionally, Defendants have been on notice of the Asserted Patents no later than at the time of filing and service of this Complaint.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,792,461

32.    Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

33.    On information and belief, Somnus Lab and Raynewood AB directly infringed and is currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '461 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product. For example, as shown below, the Accused Product practices at least exemplary claim 1 of the '461 Patent.

34.    Claim 1 of the '461 Patent recites:

A system for regulating a temperature of a portion of a bed device, comprising:

> at least one sensor that is a part of said bed device, wherein said at least one sensor is positioned in said portion of a bed device and is configured to

detect a biological signal of a user of said bed device when said user is positioned in said portion of said bed device;

a temperature control device operatively coupled to said portion of said bed device, wherein said temperature control device is configured to regulate said temperature of said portion of said bed device; and

a processor communicatively coupled to said at least one sensor and said temperature control device, wherein said processor is configured to identify said user from a plurality of users of said bed device based on said biological signal, and regulate said temperature of said portion of said bed device by said temperature control device based on said user's identity,

wherein biological signal data to identify each user of said plurality of users is stored for access by said processor, wherein said biological signal data of each user is associated with said bed device based upon the detection by said at least one sensor.

35.     The Accused Product is "[a] system for regulating temperature of a portion of a bed device":

> **What is the Somnus Lab Sleep Pad?**                                    −
>
> The Somnus Lab Sleep Pad is an advanced temperature-regulating sleep system that combines precise cooling and heating (12°C–42°C, 54°F–108°F) with smart sleep tracking and dual-zone control. It's designed to help you fall asleep faster, stay asleep longer, and wake up feeling refreshed — without the discomfort of being too hot or too cold.

Ex. 26 at 2.[3]

---

[3] Eight Sleep notes that the temperature range offered by the Accused Product is almost identical to that offered by the Eight Sleep Pod of 55–110°F.  *See* Ex. 12.

At Somnus Lab we turn temperature into your sleep super-power. Slip our ultra-thin Sleep Pad under your sheet, and it quietly keeps each side of the bed at your perfect climate all night—cool during deep sleep, gently warm when it's time to rise. No wristbands, no complicated setup. Just plug it in, lie down, and let science handle the rest.

Ex. 5 at 2.



Ex. 26 at 1.

36. The Accused Product comprises at least one sensor that is a part of said bed device, wherein said at least one sensor is positioned in said portion of a bed device and is configured to detect a biological signal of a user of said bed device when said user is positioned in said portion of said bed device." For example, "Somnus Insight," which is built-in to the Accused Product, and includes sensors to track heart rate, respiratory rate, heart rate variance, motion, and snoring:

What is Somnus Insight and how does it work?                                                —

Somnus Insight is our built-in sleep monitoring system. It measures heart rate, respiration, HRV, motion, and snoring without requiring you to wear anything. Sleep stage tracking will be added in the future via a free OTA (Over-The-Air) software update, so your device gains this capability automatically when ready.

Ex. 26 at 3.

- **Somnus Insight** — sensors and algorithms that respond to heart rate, respiration, HRV, motion, and snoring—without wearables.

Ex. 23 at 1.

## No Wearables Required

Hidden sensors read heart-rate and breathing through the pad, so you wake up to real sleep insights—no rings or watches.

Ex. 23 at 3.

37.    The Accused Product comprises "a temperature control device operatively coupled to said portion of said bed device, wherein said temperature control device is configured to regulate said temperature of said portion of said bed device."  The Accused Product comprises both a manual means to control temperature, and through a smartphone application:

## Control in a Tap

Use the bedside dial when your phone's across the room, or fine-tune everything in our smart app.

Ex. 23 at 3.



Ex. 26 at 2.

What does the Somnus Lab App do?    −

The app gives you full control of the Sleep Pad: dual-zone temperature adjustment, multi-stage scheduling across the night, and a thermal alarm for gentle wake-up. It also provides sleep insights including sleep score, duration, and stage tracking.

Ex. 26 at 3.

38.    The Accused Product comprises "a processor communicatively coupled to said at least one sensor and said temperature control device" in the form of, for example, the "Somnus Lab App":

What does the Somnus Lab App do?    −

The app gives you full control of the Sleep Pad: dual-zone temperature adjustment, multi-stage scheduling across the night, and a thermal alarm for gentle wake-up. It also provides sleep insights including sleep score, duration, and stage tracking.

What sleep data does the app track?    −

Sleep score, total sleep time, bedtime and wake time, and a breakdown of stages (awake, REM, light, deep). Nightly efficiency and visual graphs help you spot patterns over time.

Can I control each side of the bed separately?    –

Yes. The app supports **dual-zone control** so each sleeper can set their own target
temperature, schedule, and wake-up routine.

Ex. 26 at 3.  In the Accused Product, "said processor is configured to identify said user from a
plurality of users of said bed device based on said biological signal, and regulate said temperature
of said portion of said bed device by said temperature control device based on said user's
identity[,]" as shown below:



Ex. 26 at 1.



Ex. 29 at 1.



# Personalized temp curves

Cool on one side, warm on the other—each sleeper gets their perfect temperature all night, automatically.

Ex. 5 at 3.

39.     The Accused Product comprises a processor that stores "biological signal data to identify each user of said plurality of users, wherein said biological signal data of each user is associated with said bed device based upon the detection by said at least one sensor" for the same reasons discussed in the preceding paragraph. *See* ¶¶ 36–38, *supra*.

40.     In addition, or in the alternative, the Defendants also indirectly infringe the '461 Patent pursuant to 35 U.S.C. § 271(b) because it induced third parties, including subsidiaries, wholly or partially owned companies, related entities, distributors, and/or retailers, to have made, use, offer for sale, sell, and/or import the Accused Products without Eight Sleep's express consent.

The Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Products for or on behalf of said third parties. For example, on information and belief, Raynewood AB induces Somnus Lab to import, market, offer to sell, and/or sell the Accused Product in the United States. As another example, Somnus Lab also publishes specifications, studies, instruction manuals, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product.

41.    In addition or in the alternative, the Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '461 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, the Accused Products, knowing that those products constitute a material part of the inventions of the '461 Patent, knowing that those products are especially made or adapted to infringe the '461 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

42.    Defendants' infringement of the '461 Patent is willful and deliberate at least since it received the Notice Letter and/or was served with this Complaint.

43.    Eight Sleep has been and continues to be damaged by Defendants' infringement of the '461 Patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

44.    Defendants' conduct in infringing the '461 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,377,240

45.    Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

46.     On information and belief, Somnus Lab and Raynewood AB directly infringed and is currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '240 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product. For example, as shown below, the Accused Product practices at least claim 29 of the '240 Patent.

47.     Claim 1 of the '240 Patent (from which claim 29 depends) recites:

A method for operating a bed device, the method comprising:

> obtaining at least one first biological signal from a first user, the at least one first biological signal indicating a presence of the first user on a first zone of the bed device;

> obtaining at least one second biological signal from a second user, the at least one second biological signal indicating a presence of the second user on a second zone of the bed device adjacent the first zone;

> generating a plurality of control signals for the bed device in response to the obtained at least one first biological signal and the at least one second biological signal, the plurality of control signals comprising (1) a first instruction to set the temperature of the first zone to a first temperature and (2) a second instruction to set the temperature of the second zone to a second temperature that is different from the first temperature, wherein the first instruction is based at least in part on a first user-specified preference of the first user and the second instruction is based at least in part on a second user-specified preference of the second user; and

> sending the plurality of control signals to at least one respective temperature control device associated with the bed device such that the first and second zones are heated or cooled differently according to the plurality of control signals.

48.     Claim 29 of the '240 Patent recites:

A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1.

49.     Using the Accused Product requires "operating a bed device," as the Accused Product is a pad placed on a bed mattress, to be slept on by users:

 

Ex. 26 at 5.

50.     Use of the Accused Product requires "obtaining at least one first biological signal from a first user, the at least one first biological signal indicating a presence of the first user on a first zone of the bed device":

> At Somnus Lab we turn temperature into your sleep super-power. Slip our ultra-thin Sleep Pad under your sheet, and it quietly keeps each side of the bed at your perfect climate all night—cool during deep sleep, gently warm when it's time to rise. No wristbands, no complicated setup. Just plug it in, lie down, and let science handle the rest.

Ex. 5 at 2; *see also* ¶¶ 36–38, *supra*.

51.     Use of the Accused Product also requires "obtaining at least one second biological signal from a second user, the at least one second biological signal indicating a presence of the second user on a second zone of the bed device adjacent the first zone[.]" *See* ¶¶ 36–38, 50, *supra*.

52.    Use of the Accused Product also requires "generating a plurality of control signals for the bed device in response to the obtained at least one first biological signal and the at least one second biological signal, the plurality of control signals comprising (1) a first instruction to set the temperature of the first zone to a first temperature and (2) a second instruction to set the temperature of the second zone to a second temperature that is different from the first temperature, wherein the first instruction is based at least in part on a first user-specified preference of the first user and the second instruction is based at least in part on a second user-specified preference of the second user[.]"  This is evidenced by the biological signals obtained from "Somnus Insight" (*see* ¶ 36, *supra*) by the "Somnus Lab App" (*see* ¶¶ 28, 29, 38, *supra*), which in turn adjusts temperatures for the two users of the Accused Product, independently, based on each user's specified preferences (*see id.*).  Additional exemplary evidence includes:



Ex. 31 at 2-3.

53.    Use of the Accused Product also requires "sending the plurality of control signals to at least one respective temperature control device associated with the bed device such that the

-26-

first and second zones are heated or cooled differently according to the plurality of control signals."

*See* ¶¶ 36–38, *supra*.

54.    The Accused Product comprises "[a] sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1." *See* ¶¶ 36–38, *supra*.  Further exemplary evidence includes:



Ex. 26 at 2.



Ex. 31 at 1-2.

55.    In addition, or in the alternative, the Defendants also indirectly infringe the '240 Patent pursuant to 35 U.S.C. § 271(b) because it induced third parties, including subsidiaries,

wholly or partially owned companies, related entities, distributors, and/or retailers, to have made, use, offer for sale, sell, and/or import the Accused Products without Eight Sleep's express consent. The Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Products for or on behalf of said third parties. For example, on information and belief, Raynewood AB induces Somnus Lab to import, market, offer to sell, and/or sell the Accused Product in the United States. As another example, Somnus Lab also publishes specifications, studies, instruction manuals, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product.

56.    In addition or in the alternative, the Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '240 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, the Accused Products, knowing that those products constitute a material part of the inventions of the '240 Patent, knowing that those products are especially made or adapted to infringe the '240 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

57.    Defendants' infringement of the '240 Patent is willful and deliberate at least since it received the Notice Letter and/or was served with this Complaint.

58.    Eight Sleep has been and continues to be damaged by Defendants' infringement of the '240 Patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

59.    Defendants' conduct in infringing the '240 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 12,370,339

60.     Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

61.     On information and belief, Somnus Lab and Raynewood AB directly infringed and is currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '339 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product. For example, as shown below, the Accused Product practices at least exemplary claim 29 of the '339 Patent.

62.     Claim 1 of the '339 Patent (on which claim 29 depends) recites:

A method for operating a bed device, the method comprising:

> obtaining at least one first biological signal from a user, the at least one first biological signal indicating a presence of the user on the bed device;

> determining a first control signal and a time to send the first control signal to the bed device, wherein the first control signal comprises a first instruction to turn the bed device on or off and a second instruction to set a temperature of the bed device to a first temperature, and wherein the time to send the first control signal to the bed device is based on a bedtime associated with the user, the presence of the user, or both;

> sending the first control signal to the bed device at the determined time to turn the bed device on or off and set the bed device to the first temperature;

> obtaining, while the bed device is turned on, at least one second biological signal from the user, wherein the at least one second biological signal is different from the at least one first biological signal;

> determining a second control signal, wherein the second control signal comprises an instruction to the bed device to adjust the temperature of the bed device to a second temperature in response to the obtained at least one second biological signal; and

> sending the second control signal to the bed device to adjust the temperature of the bed device to the second temperature.

63.    Claim 29 of the '339 Patent recites:

A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1.

64.    Using the Accused Product requires "operating a bed device," as the Accused Product is a pad placed on a bed mattress, to be slept on by users. *See* ¶ 49, *supra*.

65.    Using the Accused Product requires "obtaining at least one first biological signal from a user, the at least one first biological signal indicating a presence of the user on the bed device[.]" *See* ¶¶ 36–38, 50, *supra*.

66.    Using the Accused Product requires "determining a first control signal and a time to send the first control signal to the bed device, wherein the first control signal comprises a first instruction to turn the bed device on or off and a second instruction to set a temperature of the bed device to a first temperature, and wherein the time to send the first control signal to the bed device is based on a bedtime associated with the user, the presence of the user, or both[.]" Exemplary evidence is shown below:

---

How do I adjust the temperature?                                                                    −

You can adjust temperature manually anytime or set it to run automatically with two layers of scheduling:

1. **Bedtime & Wake-Up Scheduling** – The system starts pre-cooling or pre-heating 15 minutes before your set bedtime, and turns off 30 minutes after your wake-up time (in case you take a little longer to get out of bed).

2. **Temperature Blocks Scheduling** – Each night is divided into three preset phases:

   **Wind Down** – The period after you get in bed but before you actually sleep. Some prefer it warm, others cool—it's up to you.

   **Early Night** – From bedtime until late night begins. Typically set cooler to encourage deeper sleep, which happens more in the first half of the night.

   **Late Night** – From late night start until wake-up or thermal alarm. Often set slightly warmer for comfort and to prepare for waking.

---

Ex. 26 at 3.

 

Ex. 29 (screenshots of Somnus Lab smartphone application); *see also* ¶¶ 36–38, 50, *supra*.

67.     Using the Accused Product requires "sending the first control signal to the bed device at the determined time to turn the bed device on or off and set the bed device to the first temperature." *See* ¶ 66, *supra*.

68.     Using the Accused Product requires "obtaining, while the bed device is turned on, at least one second biological signal from the user, wherein the at least one second biological signal is different from the at least one first biological signal[.]" *See* ¶¶ 36–38, *supra*.

69.     Using the Accused Product requires "determining a second control signal, wherein the second control signal comprises an instruction to the bed device to adjust the temperature of the bed device to a second temperature in response to the obtained at least one second biological signal[.]" *See* ¶¶ 36–38, *supra*.

70.    Using the Accused Product requires "sending the second control signal to the bed device to adjust the temperature of the bed device to the second temperature." *See* ¶¶ 36–38, *supra*.

71.    The Accused Product comprises "[a] sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1." *See* ¶¶ 38, 54, *supra*.

72.    In addition, or in the alternative, the Defendants also indirectly infringe the '339 Patent pursuant to 35 U.S.C. § 271(b) because it induced third parties, including subsidiaries, wholly or partially owned companies, related entities, distributors, and/or retailers, to have made, use, offer for sale, sell, and/or import the Accused Products without Eight Sleep's express consent. The Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Products for or on behalf of said third parties.  For example, on information and belief, Raynewood AB induces Somnus Lab to import, market, offer to sell, and/or sell the Accused Product in the United States.  As another example, Somnus Lab also publishes specifications, studies, instruction manuals, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product.

73.    In addition or in the alternative, the Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '339 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, the Accused Products, knowing that those products constitute a material part of the inventions of the '339 Patent, knowing that those products are especially made or adapted to infringe the '339 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

74.     Defendants' infringement of the '339 Patent is willful and deliberate at least since it received the Notice Letter and/or was served with this Complaint.

75.     Eight Sleep has been and continues to be damaged by Defendants' infringement of the '339 Patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

76.     Defendants' conduct in infringing the '339 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

### PRAYER FOR RELIEF

77.     WHEREFORE, Eight Sleep respectfully requests the Court to enter judgment in favor of Eight Sleep and against the Defendants as to all claims asserted herein as follows:

    a.     That Defendants have infringed each of the Asserted Patents;

    b.     That Defendants' infringement of each of the Asserted Patents has been willful;

    c.     That Eight Sleep be awarded damages, including without limitation on the basis of a reasonable royalty and/or for lost profits, adequate to compensate it for Defendants' past infringement and any continuing or future infringement of the Asserted Patents until the date such judgment is entered, including pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

    d.     That any award of damages be enhanced under 35 U.S.C. § 284 because of Defendants' willful infringement;

    e.     That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that Eight Sleep be awarded the attorneys' fees, costs, and expenses incurred in connection with this action;

f.     That Eight Sleep be awarded a preliminary injunction;

g.     That Eight Sleep be awarded either a permanent injunction, or, at least, a compulsory ongoing license fee; and

h.     That Eight Sleep be awarded such other and further relief at law or equity as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

78.    Eight Sleep hereby demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and Local Rule CV-38.

Respectfully submitted,

Date: October 6, 2025         By:   */s/ Ryan R. Smith*

Ryan R. Smith (rsmith@wsgr.com)
SBN 229323 (CA) (admitted in EDTX)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Fax: (650) 493-6811
*Attorney for Plaintiff Eight Sleep, Inc.*