## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **EIGHT SLEEP, INC.** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 2:25-cv-1011** |
| | § | |
| **v.** | § | **Judge:  Rodney Gilstrap** |
| | § | |
| **SOMNUS LAB AND RAYNEWOOD AB,** | § | **Jury Demanded** |
| | § | |
| **Defendants.** | § | |

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR INSUFFICENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION**

---

**ARCHER & GREINER, P.C.**
Brian M. Gargano (SBN 24102898)
3040 Post Oak Blvd Ste 1800-150
Houston, TX 77056
Telephone:  (713) 970-1066
Email:  bgargano@archerlaw.com

**GOLDEN BRIGHT INTERNATIONAL LAW GROUP**
Yaou Li (SBN 24102093)
(*Admission Application to be Filed*)
300 Spectrum Center Dr., Suite 400
Irvine, California 92618
Telephone:  (832) 693-9145
Email:  yli@goldenbrightlaw.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................3

   A.  Service Remains Insufficient Because Eight Sleep Never Satisfied the Only Law
       That Authorizes International Mail Service. ........................................................................3

       i.  Water Splash Holds Only That the Hague Service Convention Does Not
           Prohibit Mail Service; It Does Not Authorize It. ..........................................................3

       ii.  The Forum-Law Authorization Requirement Demands Strict Compliance with
           Rule 4(f)(2)(C)(ii), Which Eight Sleep Failed to Satisfy. ..............................................4

       iii.  Liberty Access Is Distinguishable Because It Involved the Very
           Circumstances Missing Here—Clerk Dispatch and Signed Proof of Delivery. ............5

       iv.  Eight Sleep Also Failed to Strictly Comply with Texas's Secretary-of-State
           Service Requirements. ...................................................................................................6

       v.  The Defects Cannot Be Cured by Later Personal Service or by Attempting to
           Serve a Nonexistent Legal Entity. ................................................................................7

       vi.  Untranslated Mail Service on a Swedish Citizen is Invalid under the Hague
           Service Convention. .......................................................................................................8

   B.  The Court Lacks Specific Personal Jurisdiction Over Defendants. ....................................9

       i.  Eight Sleep Bears the Burden of Establishing Purposeful Forum Contacts, and
           the Undisputed Evidence Shows None. .........................................................................9

       ii.  Every Authority Eight Sleep Relies Upon Involved Commercial Conduct
           Entirely Absent Here. ...................................................................................................10

       iii.  The Recent Decision in Echosens Suggests That the Shipment of Non-
           Commercial Engineering Samples Should Not Establish Purposeful Forum
           Conduct. ........................................................................................................................11

       iv.  A Passive Website and the Unilateral Actions of Others Cannot Create
           Jurisdiction. ...................................................................................................................12

       v.  Exercising Jurisdiction Would Be Unreasonable. .......................................................13

       vi.  Rule 4(k)(2) Does Not Cure the Jurisdictional Defect. ................................................13

CONCLUSION ..............................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*3D Systems, Inc. v. Aarotech Laboratories, Inc.*,
  160 F.3d 1373 (Fed. Cir. 1998)..................................................................................10, 11

*Ayika v. Sutton*,
  378 F. App'x 432 (5th Cir. 2010) .....................................................................................5, 7

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)..................................................................................10, 13

*Borschow Hosp. & Med. Supplies, Inc. v. Burdick-Siemens Corp.*,
  143 F.R.D. 472 (D.P.R. 1992) ..............................................................................................8

*Brockmeyer v. May*,
  383 F.3d 798 (9th Cir. 2004) ..............................................................................................4

*Buffalo Patents, LLC v. ZTE Corp.*,
  605 F. Supp. 3d 917 (W.D. Tex. 2022)..............................................................................6, 7

*Echosens, S.A. v. E-Scopics S.A.S.*,
  772 F. Supp. 3d 147 (D. Mass. 2025) .......................................................................3, 11, 12

*Ellibee v. Leonard*,
  226 F. App'x 351 (5th Cir. 2007) .......................................................................................5

*Liberty Access Techs. Licensing LLC v. ASSA Abloy AB*,
  No. 2:22-CV-00507-JRG, 2023 WL 12284682 (E.D. Tex. Aug. 25, 2023)..................1, 2, 5, 6

*Maxchief Investments Ltd. v. Wok & Pan, Ind., Inc.*,
  909 F.3d 1134 (Fed. Cir. 2018)..................................................................................9, 13

*Monolithic Power Systems, Inc. v. Meraki Integrated Cir. (Shenzhen) Technology, Ltd.*,
  No. 6:20-CV-876-ADA, 2022 WL 958384 (W.D. Tex. Mar. 25, 2022) ................................11

*Nuance Communications, Inc. v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010)..................................................................................10, 13

*Pace v. Lundh*,
  No. C18-5965 BHS, 2021 WL 2711643 (W.D. Wash. July 1, 2021).......................................8

*Republic of Sudan v. Harrison*,
  587 U.S. 1 (2019)..................................................................................................................5

*SnapPower v. Lighting Defense Group*,
  100 F.4th 1371 (Fed. Cir. 2024) .......................................................................................9, 11

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009)..................................................................................10, 13, 14

*Vega v. Hastens Beds, Inc.*,
  339 F.R.D. 210 (S.D.N.Y. 2021) .......................................................................................8

ii

*Water Splash, Inc. v. Menon*,
    581 U.S. 271 (2017)...................................................................................................1, 3, 4

**State Cases**

*Bank of Am., N.T.S.A. v. Love*,
    770 S.W.2d 890 (Tex. App.—San Antonio 1989, writ denied)...................................7

*Johnson v. Pfizer Inc.*,
    32 Conn. L. Rptr. 207, 2002 WL 1041984 (Conn. Super. Ct. 2002)..........................8

*Tex. Inspection Services, Inc. v. Melville*,
    616 S.W.2d 253 (Tex. App.—Houston [1st Dist.] 1981, no writ).............................6

*Triple Crown Moving & Storage, LLC v. Ackerman*,
    632 S.W.3d 626 (Tex. App.—El Paso 2020, no pet)................................................6

**Federal Statutes**

35 U.S.C. § 271(a) ....................................................................................................11

**State Statutes**

Hague Service Convention Article 10(a)............................................................1, 2, 3, 4

Hague Service Convention Article 5 .........................................................................8

Service of Documents Act (2010:1932) § 4a............................................................2

**Rules**

Fed. R. Civ. P. 4 ............................................................................................5, 7, 14, 15

Fed. R. Civ. P. 4(f)(2)(C)(ii) .......................................................................... *passim*

Fed. R. Civ. P. 4(k)(2).........................................................................................13, 14

Fed. R. Civ. P. 12(b)(2)..............................................................................................15

Fed. R. Civ. P. 12(b)(5)..............................................................................................15

**Constitutional Provisions**

Due Process Clause.....................................................................................................14

**DEFENDANTS SOMNUS LAB AND RAYNEWOOD AB'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION**

Defendants SOMNUS LAB ("Somnus") and RAYNEWOOD AB ("Raynewood") (collectively, "Defendants"), by and through their undersigned counsel, file this Reply in Support of Defendants' Motion to Dismiss and respectfully show the Court as follows:

## INTRODUCTION

Eight Sleep's Opposition rests on two principal arguments, neither of which withstands scrutiny.

First, Eight Sleep argues that its untranslated service by mail was valid under Article 10(a) of the Hague Service Convention and Federal Rule 4(f)(2)(C)(ii), relying primarily on the United States Supreme Court holding in *Water Splash, Inc. v. Menon* and this court's unpublished/unreported decision in *Liberty Access Technologies Licensing LLC v. ASSA Abloy AB*. If anything, these authorities support Defendants' position – not Eight Sleep's. In *Water Splash*, the Supreme Court held only that the Article 10(a) of the Hague Service Convention does not prohibit service by mail. The Court expressly declined to hold that the Convention itself authorizes such service, explaining instead that the dispositive inquiry is whether the applicable forum law affirmatively authorizes the particular method of service employed. Because that issue had not been resolved, the Supreme Court remanded the case for further proceedings.

Likewise, *Liberty Access* is readily distinguishable as unlike here, the Court found service effective because the Clerk of the Court—not the plaintiff or another entity—mailed the summons and complaint, and the plaintiff **produced signed delivery receipts demonstrating that the defendants actually received the documents**. Here, by contrast, the Texas Secretary of State — **not the Clerk of this Court**— mailed the process. Moreover, the mailing to Somnus was returned marked "Return to Sender, Unclaimed, Unable to Forward." [Dkt. No. 20 at p. 8]. As there is no

1

signed return receipt, no evidence of actual delivery, there is no compliance with the only forum-law provision authorizing international service by mail.

In arguing that this Court's prior unpublished decision in *Liberty Access* is dispositive of Defendants' Motion to Dismiss, Plaintiff has disregarded precedential federal authority holding that untranslated mail service on a Swedish citizen is invalid under the Hague Service Convention. To begin with, there is a significant line of federal cases that hold that the translation into the language of the receiving country is a prerequisite for valid service by mail under Article 10(a) of the Hague Service Convention, regardless of whether service is made through the Central Authority. Additionally, Sweden's own domestic law — the Service of Documents Act (2010:1932) § 4a — conditions service of non-Swedish documents on the recipient's consent or demonstrated comprehension of the foreign language, a requirement that federal courts have recognized as applicable to direct postal service.

Second, Eight Sleep contends that Defendants are subject to specific personal jurisdiction because it shipped a limited number of engineering samples to product testers in Texas. The undisputed Declaration of Chu Zhu, however, establishes that Defendants made no sales, generated no revenue, maintained no Texas distribution channel, and did not select testers based on their residence in Texas. (Chu Zhu Decl. ¶¶ 6 – 10). Instead, the testers were selected without regard to geography, and the engineering samples were provided solely for product testing—not for sale or commercial distribution. *Id.*

The cases Eight Sleep cites involved materially different facts, including defendants that maintained a physical presence in the forum, established commercial distribution channels, or engaged in actual sales or offers for sale directed to the forum state. Defendants engaged in none of those activities.

2

Notably, recent authority recognizes an emerging split regarding whether importation alone constitutes actionable patent infringement. As one court recently explained, "the act of importation, standing alone, is not enough for liability; rather, importation must have a commercial purpose or be for purposes of sale." *Echosens, S.A. v. E-Scopics S.A.S.,* 772 F. Supp. 3d 147, 152-157 (D. Mass. 2025). That principle squarely applies here. Defendants' shipment of a small number of engineering samples for evaluation—without any commercial purpose, sale, or revenue generation—falls outside the conduct that courts have recognized as sufficient to establish liability or support specific personal jurisdiction.

Accordingly, because Eight Sleep has failed to establish either proper service of process or a basis for exercising personal jurisdiction over Defendants, the Motion to Dismiss should be granted.

## ARGUMENT

**A.     Service Remains Insufficient Because Eight Sleep Never Satisfied the Only Law That Authorizes International Mail Service.**

   ***i.      Water Splash Holds Only That the Hague Service Convention Does Not Prohibit Mail Service; It Does Not Authorize It.***

Eight Sleep misreads and misapplies *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017) as approving service by mail on a Swedish defendant. It does not.

The question presented in *Water Splash* was narrow: **whether Article 10(a) of the Hague Service Convention prohibits service by mail**. *Id.* at 273. The Supreme Court answered only that question, holding that "the Convention does not prohibit service by mail." *Id*. The Court immediately and explicitly clarified the limited scope of its holding:

> "To be clear, this does not mean that the Convention affirmatively authorizes service by mail."

*Id.* at 284.

3

Instead, the Court held that mail service is permissible only if two independent requirements are satisfied: "(1) the receiving state has not objected to service by mail; and (2) service by mail is authorized under otherwise-applicable law." *Id.*

The Court deliberately declined to resolve the second requirement, leaving "whether Texas law authorizes the methods of service used" for consideration on remand. *Id*. Thus, *Water Splash* resolves only an issue that Defendants do not dispute—that the Convention itself does not prohibit mail service. It says nothing about whether Eight Sleep complied with the forum law necessary to authorize the particular method of service it attempted. That unanswered question is precisely the issue before this Court.

### ii.     *The Forum-Law Authorization Requirement Demands Strict Compliance with Rule 4(f)(2)(C)(ii), Which Eight Sleep Failed to Satisfy.*

The Supreme Court in *Water Splash* cites to *Brockmeyer v. May,* 383 F.3d 798 (9th Cir. 2004) for the principal that the absence of a Hague Convention prohibition "tells us only that the Hague Convention does not prohibit such service." *Id.* at 801. The Ninth Circuit in *Brockmeyer* stated that Article 10(a) "does not itself affirmatively authorize international mail service"; rather, affirmative authorization "must come from the law of the forum in which the suit is filed." *Id.* at 804. While the Supreme Court in *Water Splash* did not adopt the later part- authorization must come from the law of the forum the suit is filed, even *arguendo* that somehow it did, Plaintiff did comply with Rule 4(f)(2)(C)(ii), which permits service by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court." *Id.* at 804-808. Because those requirements are mandatory, failure to satisfy either renders service ineffective.

Eight Sleep failed both requirements.

First, the summons and complaint were mailed by the Texas Secretary of State—not by the Clerk of this Court. (Dkt. No. 20 at p. 8).

4

Second, Eight Sleep never obtained the signed receipt required by Rule 4(f)(2)(C)(ii). Instead, the mailing to Somnus was returned marked "Return to Sender, Unclaimed, Unable to Forward." A returned, unclaimed mailing is the opposite of the signed proof of delivery contemplated by Rule 4.

The Supreme Court has likewise recognized that Rule 4's predecessor required either "a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court," identifying a signed return receipt as the standard method of demonstrating delivery. *Republic of Sudan v. Harrison*, 587 U.S. 1, 15-16 (2019).

The Fifth Circuit applies the same principle. Certified mail service is insufficient where the return receipt lacks the defendant's signature, *Ayika v. Sutton*, 378 F. App'x 432, 433-434 (5th Cir. 2010), or is signed by someone other than the defendant, *Ellibee v. Leonard*, 226 F. App'x 351, 356-357 (5th Cir. 2007). Here, Eight Sleep produced no signed receipt whatsoever. Because Rule 4(f)(2)(C)(ii)'s mandatory requirements were never satisfied, service was ineffective.

### iii. Liberty Access *Is Distinguishable Because It Involved the Very Circumstances Missing Here—Clerk Dispatch and Signed Proof of Delivery.*

Eight Sleep also relies on *Liberty Access Techs. Licensing LLC v. ASSA Abloy AB,* No. 2:22-CV-00507-JRG, 2023 WL 12284682 (E.D. Tex. Aug. 25, 2023) but that unreported decision confirms why service failed here.

In *Liberty Access*, the Clerk of the Eastern District of Texas mailed the summons and complaint by Federal Express with signatures required, and the plaintiff filed executed returns containing signed Federal Express delivery confirmations. *Id.* at *5-6. On that record, the court found a prima facie showing of proper service under Rule 4(f)(2)(C)(ii) and held that Swedish translations were unnecessary. *Id.*

Those facts are absent here.

5

The Clerk of this Court did not dispatch the summons and complaint; the Texas Secretary of State did. [Dkt. No. 20 at p. 8]. And there is no signed proof of delivery because the mailing was returned "Unclaimed, Unable to Forward." *Id.*

Accordingly, *Liberty Access*'s translation analysis presupposed compliance with Rule 4(f)(2)(C)(ii). It offers no support where, as here, clerk dispatch and signed proof of delivery are missing.

### iv.     *Eight Sleep Also Failed to Strictly Comply with Texas's Secretary-of-State Service Requirements.*

Even apart from Rule 4(f)(2)(C)(ii), Eight Sleep's service independently fails under Texas substituted-service law because it chose to serve through the Texas Secretary of State.

Texas courts strictly construe substituted-service statutes, and strict compliance is required to confer jurisdiction. *Buffalo Patents, LLC v. ZTE Corp.*, 605 F. Supp. 3d 917, 925-926 (W.D. Tex. 2022). Unless the record affirmatively demonstrates strict compliance with every statutory requirement, service is invalid. *Tex. Inspection Services, Inc. v. Melville*, 616 S.W.2d 253 (Tex. App.—Houston [1st Dist.] 1981, no writ).

Service through the Secretary of State is not completed when the Secretary receives the process. Rather, service is completed only when the Secretary successfully forwards the process to the nonresident defendant. *Buffalo Patents*, 605 F. Supp. 3d at 931. Where the Secretary's mailing is returned undelivered, service fails because the Secretary has not completed the statutory duty of forwarding process. *Texas Inspection Services*, 616 S.W.2d at 254.

That is precisely what occurred here. The Secretary's mailing was returned "Return to Sender, Unclaimed, Unable to Forward." [Dkt. No. 20 at p. 8]. Texas courts have held that such returned mail does not perfect service. *See Triple Crown Moving & Storage, LLC v. Ackerman*, 632 S.W.3d 626, 635 (Tex. App.—El Paso 2020, no pet).

6

Nor can Eight Sleep rely on Defendants' actual notice.  Texas law is settled that actual notice cannot substitute for compliance with the statutory requirements governing service.  *Bank of Am., N.T.S.A. v. Love,* 770 S.W.2d 890, 892 (Tex. App.—San Antonio 1989, writ denied).  Likewise, the Fifth Circuit has repeatedly held that actual notice does not excuse noncompliance with Rule 4.  *Ayika*, 378 F. App'x at 434.

Because service through the Texas Secretary of State culminates in the forwarding of process abroad, it remains subject to the Hague Service Convention and Rule 4.  *Buffalo Patents*, 605 F. Supp. 3d at 930–31.  Eight Sleep complied with neither.

> ***v.***        ***The Defects Cannot Be Cured by Later Personal Service or by Attempting to Serve a Nonexistent Legal Entity.***

Finally, Eight Sleep's later personal service on April 23, 2026, cannot retroactively validate its earlier defective attempts at service.  That service occurred months after Eight Sleep had already relied upon its defective mail service in seeking default and cannot cure its failure to comply with Rule 4(f)(2)(C)(ii) or Texas substituted-service law.

Moreover, Somnus Lab is not a juridical entity capable of being served.  As Mr. Zhu testified under, Somnus Lab "is not a separate legal entity, but ... an EU trademark owned by Raynewood AB."  (Chu Zhu Decl. ¶ 5).  A trademark is not a legal person and cannot accept service of process.

Accordingly, because Eight Sleep has never properly served Defendants in accordance with Rule 4, the Hague Service Convention, or Texas law, the Court should dismiss the claims against Defendants or, at minimum, quash the defective service and require Eight Sleep to effect service in compliance with the applicable rules.

###### vi.     *Untranslated Mail Service on a Swedish Citizen is Invalid under the Hague Service Convention.*

"The Hague Service Convention provides alternate methods of service, in addition to the Central Authority—e.g., "service through consular channels", "service by mail if the receiving [foreign] state does not object" and "service pursuant to the internal laws of the [foreign] state." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 216-217 (S.D.N.Y. 2021).

"The aim of service is to (1) apprise parties of the commencement of an action and (2) afford sufficient time to enter an informed response." *Borschow Hosp. & Med. Supplies, Inc. v. Burdick-Siemens Corp.*, 143 F.R.D. 472, 480 (D.P.R. 1992). "Neither is accomplished by allowing service to be packaged in a foreign language, particularly when the recipient may be a private citizen." *Id*. "Under Article 5 of the Hague Convention, the Central Authority of a signatory nation may require the document to be served to be written in or translated into the official language of the state addressed. *Pace v. Lundh*, No. C18-5965 BHS, 2021 WL 2711643, at *1-2 (W.D. Wash. July 1, 2021) (*citing* Hauge Convention art. 5: "[T]he Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed."). As Sweden requires certain judicial documents to be translated, including summons and complaints, service has therefore not been perfected here under the Hague Convention. *See id.* (*citing Borschow, supra* at 480; *Johnson v. Pfizer Inc.*, 32 Conn. L. Rptr. 207, 2002 WL 1041984, at *2 (Conn. Super. Ct. 2002)).

Thus, under the authority in *Borschow*, this Court should find that service must be made in the language of the recipient in order to be effective.

**B.      The Court Lacks Specific Personal Jurisdiction Over Defendants.**

    ***i.        Eight Sleep Bears the Burden of Establishing Purposeful Forum Contacts, and the Undisputed Evidence Shows None.***

Specific jurisdiction in a patent case exists only where (1) the defendant purposefully directed activities at residents of the forum, (2) the plaintiff's claims arise out of or relate to those activities, and (3) the exercise of jurisdiction is reasonable and fair; the plaintiff bears the burden of establishing the first two elements. *SnapPower v. Lighting Defense Group*, 100 F.4th 1371, 1374-1375 (Fed. Cir. 2024).

Eight Sleep cannot satisfy that burden.

The uncontroverted Declaration of Chu Zhu establishes that Defendants have never sold products in the United States, has never commercially distributed products to customers, retailers, distributors, or resellers, has never shipped products into Texas for sale or commercial distribution, has never generated revenue from Texas, and maintains no distribution channel directed to Texas. (Chu Zhu Decl. ¶¶ 6–10).

Although Raynewood provided a limited number of engineering samples to independent product testers, those samples were not sold, were not provided pursuant to customer orders, were not shipped through distributors or retailers, and generated no revenue whatsoever. *Id*. Equally important, Raynewood did not select testers because they resided in Texas and has never purposefully directed its testing activities toward Texas residents. *Id*.

Specific jurisdiction must rest upon the defendant's own intentional conduct directed toward the forum—not merely foreseeable effects or the unilateral activities of third parties. *Maxchief Investments Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1139 (Fed. Cir. 2018). The shipment of a handful of non-commercial engineering samples to independent testers, without any commercial objective or Texas-directed marketing effort, falls well short of purposeful availment.

9

      ***ii.***     ***Every Authority Eight Sleep Relies Upon Involved Commercial Conduct Entirely Absent Here.***

Every Federal Circuit decision cited by Eight Sleep involved defendants that deliberately pursued commercial opportunities within the forum.

In *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico,* 563 F.3d 1285 (Fed. Cir. 2009) the foreign defendant physically entered the United States through its employees, displayed the accused products at a major industry trade show, and promoted those products as part of its international sales efforts. 563 F.3d at 1298–99. Raynewood did none of those things. It attended no trade shows, sent no representatives to Texas, and engaged in no marketing or sales activities directed toward the forum.

Likewise, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565-1569 (Fed. Cir. 1994), and *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230, 1233 (Fed. Cir. 2010), both involved established commercial distribution channels through which defendants intentionally placed accused products into the forum with the expectation that consumers would purchase them there.

Raynewood has no comparable commercial distribution system. It has no distributors, retailers, resellers, authorized dealers, or sales channels in Texas or anywhere else in the United States. (Chu Zhu Decl. ¶¶ 6–10). It has never sold a product to any Texas customer.

Nor does *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1998), assist Eight Sleep. There, the defendant actively solicited business by sending promotional materials, providing price quotations, and making offers to sell the accused products. *Id.* at 1378. The Federal Circuit held that those commercial solicitations constituted purposeful direction toward the forum. At the same time, however, the court held that maintaining an "essentially passive" website, standing alone, was insufficient to establish personal jurisdiction. *Id.* at 1380.

10

Raynewood has never quoted prices, accepted orders, solicited Texas customers, or offered accused products for sale in Texas. Its website does not currently permit U.S. consumers to purchase or pre-order products. (Chu Zhu Decl. ¶ 11). Thus, Raynewood's conduct resembles the passive website that *3D Systems* held insufficient—not the commercial offers to sell that supported jurisdiction.

Similarly, *Monolithic Power Systems, Inc. v. Meraki Integrated Cir. (Shenzhen) Technology, Ltd.*, No. 6:20-CV-876-ADA, 2022 WL 958384 (W.D. Tex. Mar. 25, 2022), rejected jurisdiction absent evidence that accused products actually entered the forum through a commercial stream of commerce. Mere awareness that products might reach the forum is insufficient. Here, Eight Sleep identifies only engineering samples distributed outside any commercial sales channel.

Finally, *SnapPower* likewise does not assist Eight Sleep. There, the Federal Circuit found jurisdiction because the defendant's conduct automatically interfered with the plaintiff's forum sales, creating the additional forum-directed conduct contemplated by *Walden*. 100 F.4th at 1378–80. Raynewood's shipment of non-commercial evaluation samples produced no comparable commercial consequences in Texas.

iii.     ***The Recent Decision in* Echosens *Suggests That the Shipment of Non-Commercial Engineering Samples Should Not Establish Purposeful Forum Conduct.***

Eight Sleep's jurisdictional theory also overlooks that whether the importation of non-commercial engineering samples constitutes actionable infringement under 35 U.S.C. § 271(a) remains unsettled.

In *Echosens, S.A. v. E-Scopics S.A.S.*, 772 F. Supp. 3d 147, 153-157 (D. Mass. 2025), the district court surveyed the competing authorities and recognized an emerging split regarding whether importation alone is sufficient to establish direct infringement. The court observed that,

11

under one line of authority, "the act of importation, standing alone, is not enough for liability," and that importation must instead have "a commercial purpose or be for purposes of sale." *Id*. Although *Echosens* is not controlling here, its analysis illustrates that the issue is far from settled and that the commercial nature of the importation remains an important consideration.

That observation is particularly relevant here because the undisputed evidence establishes that Raynewood's engineering samples had no commercial purpose. Raynewood did not sell the samples, did not ship them pursuant to customer orders, did not distribute them through retailers, distributors, or resellers, did not receive payment for them, and generated no revenue from their shipment. (Chu Zhu Decl. ¶¶ 6–10). Rather, the samples were provided solely for engineering evaluation and product testing.

The Federal Circuit authorities on which Eight Sleep relies all involved defendants engaged in commercial activities directed toward the forum, including marketing products, maintaining distribution channels, making offers to sell, or pursuing commercial sales. By contrast, Raynewood engaged in none of those activities. Thus, even if this Court declines to adopt the reasoning discussed in *Echosens*, the undisputed facts here remain materially different from the commercial conduct present in the Federal Circuit cases upon which Eight Sleep relies.

Accordingly, Eight Sleep cannot establish that Raynewood purposefully directed commercially meaningful activities toward Texas or that its patent claims arise out of forum-directed conduct sufficient to satisfy due process.

### iv.    *A Passive Website and the Unilateral Actions of Others Cannot Create Jurisdiction.*

Eight Sleep also points to Raynewood's website. That argument fares no better.

12

Jurisdiction must be based upon the defendant's own intentional conduct directed toward the forum, not the unilateral actions of the plaintiff or third parties. *Maxchief*, 909 F.3d at 1138–39.

Raynewood's website cannot accept orders or pre-orders from U.S. customers. (Chu Zhu Decl. ¶ 11). Eight Sleep's unilateral decision to access that website from Texas therefore creates no jurisdictional contact attributable to Raynewood.

### v.    *Exercising Jurisdiction Would Be Unreasonable.*

Even if Eight Sleep could establish minimum contacts—which it cannot—the exercise of jurisdiction would nevertheless be unreasonable.

This is the rare case in which the burden on the foreign defendant outweighs any legitimate forum interest. *See Nuance*, 626 F.3d at 1235.

Raynewood is a Swedish company with no offices, employees, bank accounts, property, agents, sales, or revenue in Texas. (Chu Zhu Decl. ¶¶ 6–10). Requiring it to defend this action in Texas would impose precisely the "significant" burden that the Federal Circuit recognized in *Synthes*. 563 F.3d at 1299.

By contrast, Eight Sleep's asserted forum interest is minimal because the only alleged Texas contacts consist of a handful of engineering samples provided solely for testing, producing no commercial sales or revenue. Unlike the defendants in *Beverly Hills Fan* or *Nuance*, Raynewood neither created nor controlled any distribution network directed toward Texas.

Under these circumstances, exercising jurisdiction would offend traditional notions of fair play and substantial justice.

### vi.    *Rule 4(k)(2) Does Not Cure the Jurisdictional Defect.*

Finally, Rule 4(k)(2) provides Eight Sleep no refuge.

13

Although Rule 4(k)(2) permits nationwide contacts to be considered in certain federal-question cases, it still requires that the exercise of jurisdiction satisfy constitutional due process. *Synthes*, 563 F.3d at 1295–96.

For the same reasons discussed above, Raynewood's nationwide contacts consist only of non-commercial engineering samples and a passive website incapable of accepting U.S. orders. (Chu Zhu Decl. ¶¶ 6–10).  Those contacts do not establish purposeful availment under the Due Process Clause.

In addition, Rule 4(k)(2) presupposes valid service of process.  Because Eight Sleep never properly served Defendants under Rule 4 or the Hague Service Convention, Rule 4(k)(2) provides no independent basis for exercising jurisdiction.

14

## **CONCLUSION**

For the foregoing reasons, Defendants Somnus Lab and Raynewood AB respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficient service of process. Alternatively, should the Court decline to dismiss the action, Defendants respectfully request that the Court quash the defective service of process and require Plaintiff to effect service in compliance with the Hague Service Convention, Federal Rule of Civil Procedure 4, and all other applicable law. Defendants further request such other and further relief to which they may be justly entitled.

DATED: July 6, 2026

Respectfully submitted,

**Archer & Greiner, P.C.**

BY:  _____/s/ Brian M. Gragano_____

Brian M. Gargano (SBN 24102898)
3040 Post Oak Blvd Ste 1800-150
Houston, TX 77056
Telephone: (713) 970-1066
Email: bgargano@archerlaw.com

Yaou Li (SBN 24102093)
(*Admission Application to be Filed*)
**Golden Bright International Law Group**
300 Spectrum Center Dr., Suite 400
Irvine, California 92618
Telephone: (832) 693-9145
Email: yli@goldenbrightlaw.com

***Counsel for Defendants***
***Somnus Lab and Raynewood AB***

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that in accordance with the Federal and Local rules the foregoing document is being filed on this 6th day of July 2026 via the Court's CM/ECF filing system, and that a copy of the foregoing documents has been served on Defendants via their counsel of record.

*/s/ Brian M. Gargano*
Brian M. Gargano